UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**DAVITI PHURTSKHVANIDZE,**

      Petitioner,

  v.

**FIELD OFFICE DIRECTOR OF ENFORCEMENT AND REMOVAL OPERATIONS, DETROIT FIELD OFFICE, IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,**

      Respondents.

**Case No. 1:25-cv-827**

**JUDGE DOUGLAS R. COLE**
Magistrate Judge Bowman

## OPINION AND ORDER

U.S. Immigration and Customs Enforcement (ICE) is currently detaining Petitioner Daviti Phurtskhvanidze pending removal proceedings. Phurtskhvanidze filed a Petition for Writ of Habeas Corpus (Doc. 1), requesting this Court to order his release or, in the alternative, to order Respondents to provide him a bond hearing. Separately, Phurtskhvanidze has moved for declaratory judgment on the same grounds. (Doc. 6). According to Phurtskhvanidze, ICE is incorrectly claiming that 8 U.S.C. § 1225(b)(2), which mandates detention, applies to him. (Doc. 1, #9–10). Instead, he says, 8 U.S.C. § 1226(a), which provides for discretionary detention, governs. (*Id.*). This Court recently addressed that precise question of statutory interpretation in *Coronado v. Sec'y, Dep't of Homeland Sec.*, No. 1:25-cv-831, 2025 WL 3628229 (S.D. Ohio Dec. 15, 2025), and further explained its reasoning in *Lucero v. Field Off. Dir. of Enf't and Removal Operations*, No. 1:25-cv-823, 2025 WL 3718730 (S.D. Ohio Dec. 23, 2025). Like the petitioners there, Phurtskhvanidze was charged

with having entered the United States without admission or inspection. (Doc. 1, #2). Thus, for the reasons more fully explained in *Coronado* and *Lucero*, the Court finds that Phurtskhvanidze falls within the express definition of an "applicant for admission," who, as such, is "seeking admission," and thus subject to § 1225(b)(2).

Still, Phurtskhvanidze, in his reply, raises a few points distinct from those the petitioners raised in *Coronado* and *Lucero*, which merit some additional attention. First, in arguing that § 1225(b)(2) does not apply to aliens in his situation, he offers other "real-life scenarios" that fall under § 1225(b)(2); he does so to show that his interpretation would not render that provision superfluous. (Doc. 8, #123–24). These scenarios include "[i]ndividuals seeking parole into the United States pursuant to § 1182(d)(5)"; "[n]oncitizens with approved visas … who are being inspected by an immigration officer"; and "[a]liens who do not possess any form of admission document and are not seeking parole, but who are attempting to enter the United States and are being inspected by an immigration officer." (*Id.* at #124). While the Court agrees these proffered scenarios show that § 1225(b)(2) would not be pure "surplusage" under Petitioner's interpretation, that does not outweigh the textual arguments as to the provision's meaning—in particular those regarding the phrase "applicant for admission"—that the Court found persuasive in *Coronado*.

Second, Phurtskhvanidze raises a Fifth Amendment Due Process challenge distinct from those raised in *Coronado* and *Lucero*. (*Id.* at #124–26). Separate from the arguments over which statutory provision should apply, he argues that Respondents cannot detain him under § 1225(b)(2) because they already previously

detained and released him on his own recognizance under § 1226(a) back in 2022. (*Id.* at #124). Basically, he argues that the government cannot change horses midstream to deprive him of rights—in this case, a bond hearing—that attached when the government previously granted him bond. (*Id.* at #124–26). Phurtskhvanidze appears to rest this argument on two grounds: (1) Supreme Court precedent requiring "that changes in position by administrative authorities require the issuance of a new decision," (*id.* at #126 (citing *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 22–23 (2020))), and (2) that his "release under § 1226(a) 'created a reliance interest in [his] continued freedom, so long as [he] abided by the terms of [his] release,'" (*id.* (quoting *Salcedo Aceros v. Kaiser*, No. 25-cv-6924, 2025 WL 2637503, at *8 (N.D. Cal. Sep. 12, 2025))).

As to the first, this Court addressed a similar point in *Lucero*, explaining that while it is "not entirely clear to the Court what *Regents* requires in terms of implementing a policy change, nor how that stacks up to the procedures Respondents followed in adopting and implementing their change," it ultimately did not matter as the petitioner had not raised an Administrative Procedures Act challenge. *Lucero*, 2025 WL 3718730, at *5. The same is true here. And inasmuch as Phurtskhvanidze is arguing that the government citing § 1225(b)(2) as the source of authority for his detainment is a "belated justification," *Regents*, 591 U.S. at 23, the Court is unconvinced. Petitioner was arrested and detained *after* ICE changed its policy and the BIA adopted the same position. (Doc. 1, #6–7, 10).

Turning to the second point, Phurtskhvanidze is correct that some district courts have (at least at the preliminary injunction stage) found that aliens released on bond under § 1226(a) have a liberty interest that "cannot be unilaterally abrogated without process by the Government simply 'switching tracks'" to § 1225(b)(2) detainment. *Salcedo Aceros*, 2025 WL 2637503, at *8. But a couple of things bear mention. First, the Court notes that *Salcedo Aceros*'s holding rested on that court's decision that § 1225(b)(2) did not apply to the petitioner, *id.* at *12; but this Court has, of course, gone the other way on that question. Further, the reasoning in *Salcedo Aceros* relies on the assumption that detaining an individual under § 1225(b)(2) when they have previously been released on bond under § 1226(a) denies them the "process" or "procedural protections" they are due. *Id.* at *8. The Court disagrees. True, Phurtskhvanidze and other like-petitioners have a liberty interest in remaining free from detention, and courts have long held that, at least in the criminal context, that liberty extends to a bond—meaning a bond cannot be revoked arbitrarily or for no reason at all. *See, e.g.*, *Atkins v. Michigan*, 644 F.2d 543, 550 (6th Cir. 1981). Moreover, it is also true that here the Petitioner was granted bond under § 1226(a) and then later detained without being afforded the bond hearing that provision requires. But his current detention did not result from the government seeking to revoke his bond under § 1226(a); rather it is the result of a change in government policy (and interpretation) through which the government determined that aliens in Petitioner's position are subject to § 1225(b)(2) and its mandatory detention provision. That Phurtskhvanidze was granted rights under one statutory provision

4

does not mean that *other* provisions of the code cannot be enforced against him, so long as those provisions lawfully apply. So, for Phurtskhvanidze to prevail, he would need to allege that § 1225(b)(2)'s procedures were not followed or that *those* procedures violate his due process rights in some way. Absent that, the government detaining him under that provision does not violate his Fifth Amendment due process rights. And if he is instead arguing that the government's policy *shift*, in and of itself, violates his rights, the better vehicle for such an argument, as discussed above and in *Lucero*, is a challenge under the APA.

Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Phurtskhvanidze's Petition (Doc. 1)[1] and **DENIES** his Motion for Declaratory Judgment (Doc. 6). The Court **DIRECTS** the Clerk to enter judgment and to **TERMINATE** this case on its docket.

**SO ORDERED.**

January 21, 2025
 **DATE**                                        **DOUGLAS R. COLE**
                                                 **UNITED STATES DISTRICT JUDGE**

---

[1] The Court dismisses without prejudice in the event that Petitioner wishes to pursue relief as a potential class member in *Bautista v. Santacruz*, No. 5:25-cv-1873, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025).